## Case No. 7,577.

### The JULIA ANN.

[1 Spr. 382; 21 Law Rep. 21.] [1]

District Court, D. Massachusetts. March, 1858.

MARITIME LIENS — CONFLICTING ATTACHMENTS — PRIOR SALE BY SHERIFF—KEEPER IN POSSESSION—PLACE OF ABODE OF MASTER.

1. Where a sheriff holds a vessel by attachment, on mesne process, to secure a debt, it is proper that he should yield possession to a marshal having a warrant to arrest the vessel, to enforce a seaman's lien for wages.
[Cited in The Cerro Gordo, 54 Fed. 392.]

2. But if the marshal do not in fact serve his warrant, by taking possession of the vessel, although he make return that he was prevented from doing so by an adverse possession of the

sheriff, this court does not take jurisdiction of the vessel.
[Cited in The Circassian, Case No. 2,721.]

3. The practice has been to wait, until the sheriff's custody has ceased, and then for the marshal to arrest the vessel.

4. A sale by order of this court will not be prevented, or affected, by a prior sale by the sheriff.

5. Whether the marshal might have proceeded to execute his warrant by force, and whether the libellant would have any, and what, remedy for his not doing so. Quaere.

6. Where the sheriff's keeper allowed the marshal to take actual possession, and afterwards held the custody for the marshal, and also for the sheriff, and subsequently the marshal sold the vessel under an order of court, the sale being made upon the deck of the vessel, in the presence of the sheriff, and of the attorney who made the attachment, neither of whom made any objection to the sale: *Held*, that the warrant to arrest was duly served, and that the sale was valid.

7. It seems that the cabin of a deserted vessel, which comes within this state temporarily, is not the "last and usual place of abode" of the master, within the meaning of the act of Massachusetts of 1837, c. 185, prescribing the service of applications for appraisal and sale.

This was a libel to obtain possession of the schooner Julia Ann, lately of Orrinton, Maine, and asserting title thereto. At the hearing it was proved, that on the 16th day of October, 1857, the sheriff of Nantucket took this schooner into his custody, under a writ of attachment, for an alleged debt, in favor of certain wreckers, and placed a keeper on board. That on the 26th of the same month, the United States marshal, with a warrant against the said schooner, issued upon a libel filed in this court by the seamen for wages, proceeded to Nantucket, and found a person on board, who said he was keeper of the vessel temporarily, while the regular keeper had gone to dinner; but he did not say for whom either of them kept the vessel; that the marshal informed him that he was directed by his precept to take possession, and that he wanted a keeper. The keeper on board consented to receive a keeper's warrant from the marshal, and hold under him. That the marshal was not aware, and was not informed that the keeper was a sheriff's bailiff, nor that the vessel was in possession of any person claiming to hold her by virtue of the process of any court, and made return that he had taken the vessel into his custody, pursuant to his warrant. On the day following the arrest by the marshal, the second keeper informed the sheriff that the marshal had arrested the vessel and put him in keeper, and he produced the written authority or warrant given him by the marshal. The sheriff replied that "he did not know anything about the marshal," and told him "to keep on." A decree was entered, upon an ex parte hearing, for the seamen's wages, and a warrant for sale issued by order of court. About twenty-five minutes before the time appointed for the sale, the sheriff put into the hands of the marshal a paper protesting against the contemplated

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission. 21 Law Rep. 21, contains only a partial report.]

sale, and claiming that he held possession under said writ of attachment. At the time and place fixed in the warrant of sale, the marshal sold said vessel, by public auction, to the respondents, who have held possession, until the filing of the present libel. The sale was made upon the deck of the vessel, in the presence both of the sheriff and of the present libellant, who was attorney for the plaintiff in the writ of attachment. Neither of them made any objection to the sale, nor did they give any notice to the respondents or other persons, that they had any claim upon the vessel. On the first day of December following, the present libellant purchased the same vessel at a sheriff's sale, made under the provisions of the Revised Statutes of this state (chapter 90, § 58, et seq.), which provides for an appraisement and sale of property, whenever an attachment is made, of "any goods and chattels which are liable to perish or waste, or to be greatly reduced in value by keeping, or which cannot be kept without great and disproportionate expense." Application was made for such appraisement, to the sheriff, by the plaintiff in the suit in which the attachment was made, and notice of such application was given, by leaving a written notice in the cabin of the vessel, as the last and usual place of abode of the master, one of the defendants; and another notice was left at the former boarding house of the mate, as being the last and usual place of abode of an agent or attorney; and a third notice was left with a "supposed" agent and attorney. The evidence showed that the master deserted the vessel, and left Nantucket, after the attachment by the sheriff, and before notice of the application for appraisement. The mate, who had charge of the vessel in the absence of the master, had also left Nantucket before said notice was served. And it was not shown that the third person with whom notice was left, had been agent or attorney for either of the absent defendants. Three appraisers were appointed, one by the creditor in the suit, and the other two by the sheriff,—he appointing one in behalf of the debtors,—and making return that they had neglected to appoint an appraiser.

David Thaxter, for libellant.
H. A. Scudder, for claimants.

SPRAGUE, District Judge. The libellant claims the possession of this vessel, which he avers is wrongfully withheld from him; and being out of possession he must maintain his claim, by showing a better right than these respondents, who held possession at the time of filing the present libel. His claim is founded upon a sale made by a sheriff, under the provisions of the Revised Statutes of this state, for the sale of property, when expenses of keeping it would be great and disproportionate. The statute provides for an

application for such sale to be made to the sheriff, who is to give notice thereof to the parties interested. Chapter 185 of the Acts of 1837 provides that such notice, in case the defendant is not within the commonwealth, and has no attorney therein, shall be in writing, and left at his last and usual place of abode within the commonwealth, if he has any, otherwise it shall be left at the dwelling-house or place of business of the person who had possession of the property at the time of the attachment; and that such notice, so served, shall be sufficient notice to the defendant to authorize an appraisal and sale. Where the defendants are not within the commonwealth, in the absence of personal notice, compliance with this provision of the statute is necessary, to render the subsequent proceedings of appraisement and sale of any validity. This is a sale by an executive officer, not by the order of any court, and it is necessary that he should have complied with the requirements of the statute, in order to confer a title. His decision is not a judicial determination, but ministerial, and does not preclude this court from going behind his return, and inquiring into the regularity of his proceedings. I am not prepared to say that the cabin of a deserted vessel, which comes into the state temporarily, can be properly called the last and usual place of abode of the master, within the meaning of the statute. The mate was no party to the suit, was not in possession of the property at the time of the attachment, and had left his temporary boarding-house before the notice was left there. The third person to whom personal notice was given, the officer returns as a "supposed" agent; but it does not appear that he was correct in his supposition, and that notice to him availed anything. The defendants were not within the state, and no notice was given them of this contemplated appraisal and sale of their property. Yet the sheriff returned that they had neglected to appoint an appraiser, and proceeded to appoint one in their behalf. I have great doubts whether the proceedings under the statute were regular, so that a sale by the sheriff could confer a title.

I do not think it necessary, however, to decide this point, which rests upon the construction of a state statute, because I am of opinion that the respondents had previously acquired a good title, under a sale by order of this court, and no subsequent sale by the sheriff could impair such title. I will state my reasons for this opinion.

The sheriff held this vessel by a writ of attachment, sued out in common form by a creditor, merely to secure an ordinary debt. It was not to enforce any lien or title. The marshal had a warrant from this court to enforce a lien for securing wages, a paramount right, having legal precedence over the claims of creditors. In order, therefore, that this paramount right should be duly assert-

ed, it was proper that the sheriff should yield to the marshal the possession and control of the vessel, so that he could truly make return that he had executed his warrant, and held the vessel pursuant to its precept. This has often been done. But in other cases, where the sheriff has refused to permit the marshal to take possession, the marshal, instead of using force to execute his warrant, has acquiesced in such refusal, and stated it in his return. And thereupon proceedings here were suspended, until the adverse possession by the sheriff had ceased, and the marshal could execute his warrant. This court has never been called upon to decide whether such acquiescence by the marshal was rightful. The libellants in such cases have not moved the court for any order upon the marshal, or instituted any proceedings against him. But the course practically has been to wait until the custody of the sheriff had terminated, and then for the marshal to execute his precept by an actual arrest of the vessel, and for the court then to proceed in the exercise of its jurisdiction. In such cases it has been held that no proceedings by the sheriff, not even a sale on execution, could defeat the paramount right of the seaman's lien, or prevent this court from ordering a sale of the vessel in satisfaction thereof. The purchaser under the sheriff's sale, could take only the right of the debtor, subject to all prior liens and incumbrances. See The Gazelle [Case No. 5,289]; The Havana [Id. 6,226]. As there stated, the question what are the rights and duties of the sheriff and marshal in such cases, is a very important one. On the one hand, it may be said that being mere executive officers, holding precepts under distinct sovereignties, exercising distinct jurisdiction, they stand on equal ground, and the first in possession is to be deemed the first in right, and must retain possession, until the exigency of his writ has been satisfied. This view is attended with the practical convenience of preventing conflict between executive officers, or the necessity of their forming an opinion, as to which of the claims which they are commanded to enforce, has legal precedence or priority. On the other hand, it may be urged that the convenience of the executive officers is not to be consulted, at the expense of the legal and substantial rights of the parties; that questions of the legal right of such officers to arrest persons and property very frequently arise, which they must solve in the performance of their duty, and that the question between a seaman's lien and a creditor's attachment is less difficult than many which executive officers must encounter. Then, as to the argument that they are acting under distinct sovereignties, exercising distinct jurisdiction; it may be replied that the jurisdiction of the United States and of a state are in some respects distinct, but in no sense affecting the present question. They are distinct, so far as the constitution

of the United States has made them so. Within the sphere prescribed by the constitution, the sovereignty and jurisdiction of the United States extend over and control the territory and the people of every state. A law of the United States is not only the law, but the paramount law in Massachusetts. By the express terms of the constitution, it is "the supreme law of the land," . . . "anything in the constitution or laws of any state to the contrary notwithstanding." The whole people of a state, with all the sovereignty they possess, have no right to impair or impede such law, and can confer no power to do so upon any of its officers. Now the law which gives to a seaman a paramount right to wages, and the jurisdiction of the courts of the United States authorized, as it is, by the express words of the constitution, are universally admitted. Const. art. 3, § 2. How, then, can a subordinate state officer have a right to defeat or obstruct the enforcement of such law, under the authority of such courts? This would be going even beyond the doctrine of nullification. That doctrine never insisted that a valid law of the United States could be resisted, either by a state or its officers, but only that where its validity was doubtful, a state had the right to decide the question of its constitutionality, and that such decision would justify its people and officers in resistance. But it was to be resistance only to enactments held by the state to be void, and not law, because transcending the limits of the constitution. The fatal infirmity of the doctrine was in holding that the state had a constitutional right to make such decision. But in the present case, nobody pretends that the law which the marshal was attempting to enforce was not valid, or, that the court that issued the precept, had not jurisdiction. Who, then, could rightfully obstruct the execution of his warrant? It might be added that this court would preserve the right of the sheriff, and by its final decree order a restoration to him of such part of the property as should remain, after satisfying the paramount claims of the seamen. Such are the views that may be presented of this question. But in the case now before me, I am not called upon to determine what measures the marshal might have resorted to, or what would have been within the power of the court, if the sheriff had, by resistance to the marshal, prevented the service of his warrant. The consideration we have given to the laws under which the sheriff and marshal acted, and their respective duties, may aid us in determining what should be the construction and effect of their acts. (The judge here went into an examination of the evidence, and concluded by saying:) In my judgment, there was, with the tacit acquiescence of the sheriff, such arrest and custody of this vessel by the marshal, as gave the court complete jurisdiction over her, and the sale made by the marshal

gave a perfect title to the purchaser. The libel is therefore dismissed with costs.

See acc. Poland v. The Spartan [Case No. 11,-246]; Certain Logs of Mahogany [Id. 2,559]; Riggs v. The John Richards [Id. 11,827]; The Flora, 1 Hagg. Adm. 298, with the remarks of Taney, C. J., thereon [Taylor v. Carryle],—20 How. [61 U. S.] 603.—and his opinion,—Id. 600–617; The Florenzo [Case No. 4.886]; Taylor v. The Royal Saxon [Id. 13,803]; contra. S. C., 24 Pa. St. 259; 20 How. [61 U. S.] 583. See, also, The Taranto [Case No. 13,751].